**In re SENOR'S Q, INC., Debtor.**

No. 95–10794–B–7.

United States Bankruptcy Court,
E.D. California.

July 3, 2001.

## ORDER DENYING APPLICATION FOR PAYMENT OF UNCLAIMED FUNDS

W. RICHARD LEE, Bankruptcy Judge.

This Order is entered in response to an ex parte Application For Payment Of Unclaimed Funds (the "Application") filed by Charlene J. Keys, dba Keys Research ("Keys"). Keys filed the Application on behalf of, and as the agent for, Andrea Rothschild ("Rothschild"), president of Bates and Bancroft Corp. ("Bates & Bancroft"). The Application requests an order directing the Clerk of the bankruptcy court to remit to Keys the sum of $2,469.88 which was previously deposited by the chapter 7 trustee into the court's Registry (the "Unclaimed Funds"). The Unclaimed Funds represent a distribution made by the trustee against Bates & Bancroft's unsecured claim. This order contains the court's findings of fact and conclusions of law. For the reasons set forth below, the court finds and concludes that Ms. Rothschild is not the *rightful owner* entitled to recover the Unclaimed Funds pursuant to 28 U.S.C. §§ 2041 & 2042 and the Application is denied.

## BACKGROUND

This bankruptcy proceeding was commenced under chapter 7 in early 1995. In March 1995, Bates & Bancroft timely filed a proof of unsecured claim in the amount of $43,908.65. The proof of claim was filed on behalf of Bates & Bancroft c/o of its attorney Bruce Glasser, Esq. at the attorney's office address. The chapter 7 trustee did not object to the claim and ultimately made a pro rata disbursement to Bates & Bancroft in the amount of $2,469.88 pursuant to 11 U.S.C. § 726. The check was transmitted to Mr. Glasser who declined to accept the money and returned it to the trustee. After 90 days, the trustee

stopped payment of Bates & Bancroft's check pursuant to 11 U.S.C. § 347(a) which provides in pertinent part:

> Ninety days after the final distribution under section 726, 1226, or 1326 of this title in a case under chapter 7, 12, or 13 of this title, as the case may be, the trustee shall stop payment on any check remaining unpaid, and any remaining property of the estate shall be paid into the court and disposed of under chapter 129 of title 28.

On March 28, 2000, the trustee transmitted the Unclaimed Funds to the Clerk of the bankruptcy court with an enclosure memo which stated:

> "We sent the check to the Attorney who had filed the [Bates & Bancroft] Proof of Claim. The Attorney returned the check informing us he had not had contact with his client for several years."

Once the Unclaimed Funds were sent to the Clerk, they became subject to the jurisdiction of 28 U.S.C. § 2041 which provides in pertinent part:

> All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court.
>
> This section shall not prevent the delivery of any such money *to the rightful owners* upon security, according to agreement of parties, under the direction of the court. (Emphasis added.)

The trustee is also required to file with the Clerk a list of all known names and addresses of the entities and the amounts which they are entitled to be paid from remaining property of the estate that is paid into the court pursuant to section 347. *Fed.R.Bankr.P. 3011.* In May 2000, the

trustee filed his Trustee's Report of Distribution showing that Bates & Bancroft Corp. was still entitled to receive a distribution in the amount of $2,469.88. The bankruptcy case was closed and the Final Decree was entered in September 2000. Keys filed the Application for Ms. Rothschild on April 3, 2001.

## PROCEDURE FOR RECOVERING UNCLAIMED FUNDS

Once unclaimed funds are deposited with the Treasury of the United States, they shall remain so deposited until claimed. Unclaimed funds that have been deposited in the Court Registry for five years shall escheat to the United States pursuant to 28 U.S.C. § 2042. No money paid into the court shall be withdrawn except by court order. An entity entitled to any money deposited with the court may, on petition to the court, and *"full proof of the right thereto,"* obtain an order directing payment of said money. *Id.* (Emphasis added.)

The procedure for a proper claimant to recover its money is prescribed in this court's Guidelines Pertaining to Requests for Payment of Unclaimed Funds and is summarized as follows:

 A request for payment of the unclaimed funds shall be made in the form of a written petition, application or motion. The burden of proving an entity's entitlement to unclaimed funds rests with the entity. An Application for payment of unclaimed funds must be supported by competent evidence; it must comply with *Fed. RBankr.P.* 9011; and it must comply with the general requirements for forms set forth in Federal and local rules of bankruptcy procedure. The Application must contain, *inter alia,* the following information:

a. The exact dollar amount of the dividend check issued by the trustee to the

original claimant and the date that the funds were deposited with the Court by the trustee;

b. The name, address and telephone number of the original claimant (including documentation establishing identity, such as; a birth certificate, unexpired passport, or valid driver's license) and a brief history of the original claimant (from filing the claim to present) which includes, if applicable, any sale, merger, consolidation, buyout, dissolution, marriage or death of the original claimant together with any supporting documentation;

c. The petitioner's/applicant's/movant's identity and relationship to the original claimant;

d. If the petitioner/applicant/movant is the claimant's agent, a statement that the claimant has authorized it to collect the funds, supported by an original power of attorney containing the claimant's notarized signature and such a grant of authority;

e. If the petitioner/applicant/movant is the claimant's agent, the date copies of the petition/application/motion and any supporting documents were mailed to the claimant; and

f. If the funds are deposited with the Treasury of the United States, the date copies of the petition/application/motion and any supporting documents were mailed to the U.S. Attorney.

An application for unclaimed funds may be filed by a representative of the original claimant. However, any order authorizing distribution of unclaimed funds must require that the check be issued payable to the claimant and the representative applicant jointly so that both must endorse it. Upon receipt of an application for payment of unclaimed funds, and payment of the appropriate fees, the Financial Administrator of the court will review the application and accompanying documents for completeness, determine whether the notice requirements have been met, and verify that the unclaimed funds remain on deposit and that they are being paid to the proper creditor or to an agent entitled to receive unclaimed funds on behalf of the proper creditor. If acceptable, the application, the supporting documentation and the proposed order are then presented to the appropriate judge.

## ANALYSIS

■ The court's analysis of this case focuses on the terms "rightful owner" and "right thereto" as prescribed in 28 U.S.C. §§ 2041 & 2042. In support of the Application, Keys submitted the documents required by the above procedure including a declaration from Ms. Rothschild dated March 19, 2001, which states in pertinent part:

"2. THAT I previously owned a business known as Bates and Bancroft Corp
. . . .

3. THAT Bates & Bancroft Corp. became inactive in approximately 1996, and that the office . . . was closed.

4. THAT I was the CEO and owner of Bates & Bancroft Corporation, that I am entitled to collect any unclaimed funds due this company, and that there is no other person or entity who would be entitled to claim such assets."

The Application requests that the court distribute the Unclaimed Funds to Keys. It includes an "Agent Authorization" from Ms. Rothschild personally granting Keys a limited power of attorney to collect the Unclaimed Funds, for an "agreed upon fee," for Ms. Rothschild's benefit. The Application also includes a photocopy of Ms. Rothschild's driver's license and a copy of the Statement of Domestic Stock Corporation for Bates & Bancroft Corp. filed with the Secretary of State on Febru-

ary 10, 1995. That document lists Ms. Rothschild as the sole officer, director and agent for service of process for Bates & Bancroft. The court takes judicial notice of the California Secretary of State's records as of this date which confirm Ms. Rothschild's status as a principal of Bates & Bancroft. They also reflect the corporation's status as "suspended" by the Secretary of State effective May 18, 1998, and "suspended" by the Franchise Tax Board effective November 1, 2000.

■■ In the court's view, Ms. Rothschild's declaration and the documents submitted in support of the Application are insufficient to establish that she is the "rightful owner" of the Unclaimed Funds. It appears that Bates & Bancroft is still a corporation under California law, even though it may be "inactive" or "suspended," because it has not been properly dissolved in compliance with State law. When the corporate claimant is still in existence, it is not appropriate for the court to look past the corporate entity to the individual shareholders and the corporate claimant is entitled to make a claim for surplus funds under 28 U.S.C. § 2042. *In re The Georgian Villa, Inc.*, 55 F.3d 1561, 1563 (11th Cir.1995). The bankruptcy court's equitable power to disregard the corporate entity for the purpose of distributing funds under section 2042 is only appropriate where the corporation is no longer in existence. *Id.*

Under California law, a corporation may elect to wind up its affairs and voluntarily dissolve by the vote of shareholders holding 50% or more the voting power. *Cal. Corp.Code § 1900.* When the affairs of the corporation have been completely wound up without a court proceeding, a majority of the directors of the corporation must sign and file a certificate of dissolution stating, *inter alia,* (1) that the corporation has been completely wound up, (2) that the corporation's known debts and liabilities have been actually paid or adequately provided for as far as its assets permitted, (3) the name and address of the person or entity that has assumed or guaranteed payment of the corporate liabilities or where an appropriate deposit has been made, (4) information sufficient to enable a creditor to appear and claim payment of a debt or liability, (5) that the corporate tax liabilities have been and will be paid, (6) the name and address of the person or entity that has assumed or guaranteed payment of the corporate taxes as security for a tax clearance certificate from the Franchise Tax Board, and (7) that its known assets have been distributed to the persons entitled thereto as the case may be. *Cal. Corp.Code § 1905(a).* The certificate of dissolution in compliance with section 1905(a) must be filed with the Secretary of State "... and thereupon the corporate powers, rights and privileges of the corporation shall cease." *Cal. Corp.Code § 1905(c).*

After the certificate of dissolution is filed with the Secretary of State, the California Franchise Tax Board shall notify the Secretary of State when all corporate taxes imposed under the Revenue and Taxation Code have been paid or secured, "... at which time the corporation shall be dissolved as of the date of filing the certificate of dissolution and *thereupon its corporate existence shall cease.*" *Cal. Corp. Code § 1905(c).* (Emphasis added.)

"Only the certificate that the corporation 'has been completely wound up' is a 'formal end of the corporate existence'. *(Citation omitted)* When the winding up has been completed by this process, the corporation 'ceases to exist'." *(Citation omitted) ABC Brewing Corporation v. Commissioner of Int. Rev.,* 224 F.2d 483, 487 (9th Cir.1955).

"Any assets inadvertently or otherwise omitted from the winding up continue in the dissolved corporation for the benefit of the persons entitled thereto and on realization shall be distributed accordingly." *Cal. Corp.Code § 2010(c)*. Any assets of the dissolved corporation distributed to shareholders without prior payment or adequate provision for payment of the corporate debts and liabilities may be recovered by the corporation for the benefit of its creditors. *Cal. Corp.Code § 2009(a)*.

Here, the Application submitted on behalf of Ms. Rothschild simply states that Bates & Bancroft "... became inactive in approximately 1996 ...." It does not appear from the Application that the affairs of Bates & Bancroft have been wound up, that a certificate of dissolution has been filed with the Secretary of State or that the corporate debts and taxes have been paid or provided for in compliance with California law. The Secretary of State's records confirm that the corporation is merely "suspended," and that some corporate taxes may still be owing to the Franchise Tax Board. In the absence of a proper dissolution, Bates & Bancroft remains the "rightful owner" of the Unclaimed Funds and is therefore the only party entitled to petition the court, either directly or through an authorized agent, for release of that money.

## CONCLUSION

Based on the foregoing, the court finds and concludes that Ms. Rothschild is not the rightful owner of the Unclaimed Funds. Keys is not the authorized agent of Bates & Bancroft Corp. and the Application is denied without prejudice.